## UNITED SHOE MACHINERY CO. v. GREENMAN.

(Circuit Court of Appeals, First Circuit. March 27, 1907.)

No. 663.

1. PATENTS—ANTICIPATION—ABANDONMENT OF MACHINE.

A machine fully embodying a device subsequently patented by another does not lose its effect as an anticipation because its use was abandoned, solely for the reason that the product in making which it was employed was not successful, where it is shown that the machine operated successfully, and that the maker did not abandon the invention embodied therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 73.

Abandonment of invention, see note to Hayes-Young Tie Plate Co. v. St. Louis Transit Co., 70 C. C. A. 6.]

2. SAME—CLUTCH.

The Davey & Ladd patent, No. 672,056, for a clutch for starting and stopping machines, is void for anticipation by the clutch previously employed in the Stiles-Thomson machine for setting lacing studs in shoes.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 145 Fed. 538.

William K. Richardson (Joseph Warren, on the brief), for appellant.

T. Hart Anderson, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

COLT, Circuit Judge. This is a suit for infringement of the Davey & Ladd patent, No. 672,056. The patent was applied for March 31, 1897, and issued April 16, 1901. The court below dismissed the bill, and the case is now before this court on appeal.

The Davey & Ladd patent is for an improvement in clutches for starting and stopping machines. The improvement relates particularly to the stopping feature of the clutch. The specification says:

"This invention relates to a clutch and is shown as embodied in a clutch adapted to be used on sewing-machines, nailing-machines, and in machines in which it is desirable to stop the machine at a definite point in its cycle of movements—as, for example, in the case of the sewing-machine when the needle is at its highest position, or in the case of a nailing-machine after the nail is driven and when the parts are in the position to receive the material or at a position to receive the nail to be driven at the next operation of the machine. * * * The machine is thus stopped automatically at a definite point in the rotation of the main shaft, a. and therefore at a definite point in the cycle of operations of the instrumentalities actuated by said main shaft."

In machines to which the Davey & Ladd clutch is adapted, the machine should not stop while performing its cycle of operations, as, for example, in a nailing-machine during the various operations necessary to drive the nail. The characteristic feature of the Davey & Ladd clutch is that the machine is always stopped at the completion of its cycle of operations. Since the cycle of operations takes place at each revolution of the main shaft, this result is accomplished by so organizing the clutch that the machine is stopped at the same pre-

determined point on the main shaft. In one form of the device, the machine may be stopped at the completion of any number of revolutions of the main shaft, or at the completion of one revolution, depending on the will of the operator. In the other form of the device, the machine is automatically stopped at the completion of a single revolution of the main shaft.

In the organization of the Davey & Ladd device, we find a clutch member provided with a frictional surface at each end. This clutch member is connected with the main shaft, and is capable of a longitudinal movement thereon. When the operator presses the treadle with his foot, the clutch member is moved by a spring into contact with the frictional surface of the driving belt pulley, and the machine is set in operation. When the operator removes his foot from the treadle, the clutch member, by means of a cam on the main shaft and connecting mechanism, is moved away from the driving belt pulley, and into contact with the frictional surface of the stationary brake, and the machine is stopped. In a modified form of the device, the connecting mechanism between the cam and the clutch member is so arranged that, when the operator presses the treadle with his foot, the machine is automatically stopped upon the completion of one revolution of the main shaft. It is by means of the cam and connecting mechanism co-operating with the clutch member and stationary brake that the machine is stopped at a predetermined point on the main shaft, or when it has completed its cycle of operations.

The charge of infringement is limited to claims 2 and 6 of the patent. Claim 2 reads as follows:

"(2) The combination of the driving clutch member of the machine provided with a friction-surface; with the main shaft, and a driven clutch member connected to rotate therewith but capable of independent longitudinal movement thereon and provided with friction-surfaces at its opposite ends; and a stationary friction-surface or break, and means for impelling said driven clutch member into engagement with the friction-surface of the driving member, and connecting mechanism between the main driven shaft and driven clutch member for moving said driven clutch member out of engagement with the driving member and into engagement with the brake, substantially as described."

Claim 6 is substantially the same as claim 2, except that it specifies that the clutch is engaged with the brake "at a predetermined point in the rotation of said main shaft, whereby said main shaft is stopped in a predetermined angular position."

The combinations described in these claims comprise six elements: (1) The main shaft; (2) the driven clutch member connected with the main shaft and capable of longitudinal movement thereon, and with frictional surfaces at each end; (3) the driving clutch member; (4) the stationary brake; (5) means for impelling the driven clutch member into engagement with the driving member; (6) connecting mechanism between the main shaft and the driven clutch member for moving the latter away from the driving clutch member and into engagement with the brake.

The main defense to this suit is anticipation. The defendant has introduced in evidence the clutch mechanism of the prior Stiles-Thomson lacing stud setting machine as a full and complete anticipation of the

patent in suit. A comparison of this clutch with the Davey & Ladd clutch shows the substantial identity of the two structures. On this point, Mr. Browne, complainant's expert, says:

"On comparing the Stiles-Thomson machine with claims 2 and 6 of the Davey & Ladd patent in suit, I find in said machine all the features recited in each of these claims."

While the identity of the mechanism of the two clutches, except in details of construction, is apparent, the complainant contends: First, that the Stiles-Thomson machine was only an abandoned experiment; second, that there is no evidence that the clutch part of this machine was ever operated or ever tested as to its capacity for stopping the machine; and, third, that the subsequent Stiles patent is evidence of an intention on the part of Stiles to abandon the form of clutch embodied in the Stiles-Thomson machine.

The history and use of the Stiles-Thomson machine, as disclosed by the evidence, may be stated as follows:

The Stiles-Thomson machine was designed for setting bifurcated or two-pronged lacing studs in leather shoes. It was constructed from drawings, which are in evidence, by George A. Stiles, between September and November, 1893, in the factory of the Judson L. Thomson Company. The Thomson Company was engaged in the manufacture of rivets, clasps, and other hardware supplies. In order to meet competitors, it was desirous of manufacturing and putting upon the market a bifurcated lacing stud. It was the intention of the Thomson Company that the machine should be used by its customers. It was found, however, that a lacing stud with two prongs was not as good as a tubular lacing stud, because the prongs would not hold firmly enough in the leather to withstand the pull and strain of the lacing, and it was for this reason that only one machine was built, and that this use of this machine was discontinued.

"We found," says Mr. Bartel, treasurer of the Thomson Company, "that two prongs on the stud would not hold as well as a stud with a tubular shank. A bifurcated stud simply held the stud on two sides, where a stud with a tubular shank would split in six equal parts, holding all around."

Again, Mr. Bartel testifies:

"Q. Can you state any reason why the company built only one such machine? If so, please do so. A. I can. The reason only one machine was built was because the goods we intended to use the machine for were defective, and after experimenting for some time we abandoned putting the goods upon the market."

And to the same effect is the testimony of Mr. Thomson, president of the company:

"Q. Can you state why the said company built only one of these lacing stud setting machines? A. Because the two prongs would not hold firmly enough in the leather of the upper of the shoe so but what it would pull out under the strain of lacings, as it had only two sides or prongs, instead of a tubular form that had always been in general use, and it was thought best to abandon that kind of a lacing stud."

The machine was operated in the factory of the Thomson Company for a short time during the month of December, 1893. It was then laid

aside in the pattern room, where it remained until about the time it was introduced in evidence in the present suit.

As to the operation of the machine, Mr. Bartel testifies as follows:

"Q. To your personal knowledge, was defendant's Exhibit 'Stiles-Thomson Machine' used for setting bifurcated lacing studs in the uppers of shoes? If so, when was it first so used? A. In the latter part of 1893.

"Q. Where was the machine used for setting bifurcated lacing studs in the uppers of shoes? A. In the factory of the Judson L. Thomson Manufacturing Company, at Waltham, Mass."

"Q. Did the Judson L. Thomson Company put out any studs having bifurcated shanks? A. They never sold any.

"Q. So far as you know, can you state, of your own personal knowledge, whether the Stiles-Thomson machine operated successfully to set the lacing studs having bifurcated shanks? A. I think I can. I saw the machine operated, and it set the studs successfully in leather and in uppers of shoes."

To the same effect, Mr. Unbehend, the superintendent of the Thomson Company, testifies:

"Q. Do you remember whether the machine which you recall as being finished in December, 1893, was operated; and, if so, state what the said machine operated upon? A. I saw it operated on lacing studs; that is, for fastening lacing studs to shoes."

Upon the same point, Mr. Thomson testifies:

"Q. What did Mr. Stiles do after he completed the Stiles-Thomson machine? A. He worked the machine for me in the superintendent's office.

"Q. Did you see the Stiles-Thomson machine in operation setting lacing studs? A. I did.

"Q. When? A. During the fall of 1893."

"Q. Did you personally set any lacing studs with the Stiles-Thomson machine? A. I believe I did."

These witnesses are not interested in the present suit.

This evidence establishes these facts: The Stiles-Thomson machine was built in the fall of 1893, and successfully operated during December of that year. Only one machine was built, and that machine laid aside, not because it was not practical, or would not set bifurcated lacing studs, but because this form of lacing stud was inferior to the tubular form, in that it was liable to pull out of the leather under the strain of the lacings.

The complainant insists, however, that the evidence does not show that the Stiles-Thomson machine was run by power, or that the clutch mechanism operated successfully. The answer to the first proposition is that the machine was built to run by power, and in no other way, and that it could not have been operated by hand, because there is no device shown for so operating it. The answer to the second proposition is that, if the machine operated to set lacing studs, it necessarily follows that the clutch must have been practically operative, since it is the mechanism provided for starting and stopping the machine; in other words, the machine as organized could not have performed its function of setting lacing studs except through the instrumentality of the starting and stopping mechanism. Since it is established that the machine set lacing studs practically, it must be concluded that the clutch mechanism was a practical success. Again, the fact that the Davey & Ladd clutch in suit is practically operative

raises a strong presumption that the clutch of the Stiles-Thomson machine was practically operative, since the two clutches are substantially identical.

On July 21, 1894, some seven months after he built his machine for the Thomson Company, Stiles filed his application for a patent, which was granted August 11, 1896.

This patent covers the lacing stud mechanism of the Stiles-Thomson machine, but does not cover in terms the clutch embodied in that machine. With respect to the clutch mechanism, the patent may be viewed from three standpoints: From the standpoint of the drawings; from the standpoint of the specification; and from the standpoint of both the drawings and the specification.

First. Figures 2 and 3 of the drawings show the clutch of the machine; that is, the clutch as it appears when looking at the machine. On this point the complainant's expert, Mr. Mayo, testifies:

"Q. I will ask you to examine the Stiles-Thomson machine, and compare it with the drawings of the Stiles patent, and ask you whether or not these drawings of the Stiles patent do not correctly and truly illustrate the Stiles-Thomson machine in so far as the starting and stopping mechanisms of that machine are concerned? A. The lines in the drawing correctly represent a side view of the machine assembled, but they do not show a drawing in sections of the clutch mechanism.

"Q. As I understand your answer, what is shown in the Stiles patent drawings is a correct and true representation of the Stiles-Thomson machine, as you would observe that machine without taking it apart? A. Yes, sir."

The letter k in these drawings, which points specifically to the brake, may fairly be considered, if we confine our attention to the drawings, as referring to the clutch mechanism as a whole, for the term clutch in this art sometimes refers to the driven clutch member, and sometimes to the group of devices which comprise the clutch.

Second. The specification, on the other hand refers to the letter k of the drawings as the friction clutch k, meaning the driven clutch member; and it fails to describe or to make any reference to the stationary brake.

Third. Looking at the specification and the drawings together, there is a plain inconsistency between them which cannot be reconciled. In the attempt to harmonize the drawings with the specification, the complainant has constructed a so-called model of the clutch of the Stiles patent. This model is not built according to the drawings of the patent, and its defects as a practical device are obvious. It clearly does not serve to prove that there is no repugnancy between the drawings and the specification, but rather tends to strengthen the belief that Stiles intended to patent the clutch of his machine. The probability is that, in taking out his patent, Stiles paid little attention to the clutch, which is a common device in machines, and that his mind was directed mainly to the mechanism for setting lacing studs. He says in his patent that his "invention relates to machines for setting lacing studs in fabrics," and "incidentally" to "a start and stop mechanism."

While the Stiles patent cannot be regarded as an anticipation of the Davey & Ladd clutch in suit, it manifestly cannot be taken as evidence of any intention on the part of Stiles to abandon the clutch embodied in his machine.

Our conclusion is that the clutch of the Stiles-Thomson machine is a direct anticipation of the Davey & Ladd patent. The Stiles-Thomson machine was produced at the hearing in the Circuit Court, and also at the hearing in this court, and the substantial identity of the two clutch mechanisms was established by concrete proof. The evidence also shows that the clutch of the Stiles-Thomson machine was not used for purposes of experiment, or to gratify curiosity, or to see whether it was successful, or whether anything more was to be done to perfect it; but that it was put to use in ordinary business as a thing which was completed, and that the reason why it was only used for a short time has no bearing on the question of its practical operativeness. It thus fulfills the tests with respect to anticipation which the Supreme Court, adopting the views of Judge Shipman in the court below, applied in Brush v. Condit, 132 U. S. 39, 47, 48, 10 Sup. Ct. 1, 33 L. Ed. 251, and is also within the rules laid down in Deering v. Winona Harvester Works, 155 U. S. 286, 300, 301, 15 Sup. Ct. 118, 39 L. Ed. 153, Brooks v. Sacks, 81 Fed. 403, 26 C. C. A. 456, and Westinghouse Company v. Stanley Instrument Company, 133 Fed. 174, 177, 179, 68 C. C. A. 523.

The decree of the Circuit Court is affirmed, and the appellee recovers costs in this court.