## JACKE v. LONG.

### SAME v. GOLDSBOROUGH.

Patent Appeals Nos. 4256, 4257.

Court of Customs and Patent Appeals.
April 29, 1940.

Rehearing Denied June 21, 1940.

Howson & Howson, of New York City (Dexter N. Shaw, of Philadelphia, Pa., William A. Smith, Jr., of Washington, D. C., and Charles H. Howson, of New York City, of counsel), for appellant.

Edgar W. Adams and George C. Lord, both of New York City, for Long.

J. G. Norton, of New York City, for Goldsborough.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

These are appeals in interference proceedings from the decisions of the Board of Appeals of the United States Patent Office affirming the decisions of the Examiner of Interferences awarding priority of invention to appellee Maurice B. Long in interference No. 70,874, appeal No. 4256, and to appellee Thaddeus R. Goldsborough in interference No. 72,441, appeal No. 4257.

For the purpose of the hearing in this court, the records in the interferences were consolidated.

No evidence was introduced by the appellee in either of the involved interferences.

The evidence on behalf of appellant was originally submitted in other interferences, and, by stipulation of counsel for the parties, was made a part of the record in each of the involved interferences. Inasmuch as appellant relies upon the same evidence in each interference, we shall dispose of the issues presented in one opinion.

### Appeal No. 4256.

The interference is between appellant's application, serial No. 320,667, filed November 20, 1928, and appellee Long's application, serial No. 434,985, filed March 11, 1930 as a division of his application filed October 1, 1926, now patent No. 1,945,557, issued February 6, 1934.

The invention relates to radio receiving apparatus in combination with means for automatically tuning the radio receiver and automatically operated means to render the loud speaker ineffective during the tuning operation.

Count 1 calls for means for automatically tuning a radio receiver from a point remote therefrom, together with automatically operated means for rendering the loud speaker ineffective during the tuning operation.

Counts 2 and 3 are somewhat broader than count 1 in that the automatic tuning means called for therein may be either at the receiver or at a point remote therefrom.

The counts in issue read:

"1. Remote tuning apparatus for a radio receiving set comprising a plurality of station selector switches, relay circuits energized by the operation of said selector switches, a relay common to said relay circuits, a signal responsive element, and means controlled by the common relay for rendering said signal responsive element inoperative when said relay circuits are operated.

"2. In combination, a radio receiver, selectively operable electromagnetic means for controlling the tuning of said radio receiver to render it selectively responsive to any of a plurality of radio signals, a loud speaker for reproducing the signals received by said receiver, and means for automatically rendering said loud speaker inoperative in response to any operation of said electromagnetic means.

"3. In combination with a radio receiving set having a sound reproducer connected thereto, a switch in circuit with said sound reproducer, an electromagnet associated with the switch, selectively operable means for tuning the receiving set to any of a plurality of frequencies to render the sound reproducer responsive thereto and means associated with the tuning means to energize the electromagnet to cause the switch to render the sound reproducer ineffective in response to any tuning process whereby undesired sounds are prevented."

Appellant is the junior party, and the burden was upon him to establish priority of invention by a preponderance of the evidence.

Having submitted no evidence, appellee is restricted to the filing date of his original application—October 1, 1926—for conception and reduction to practice.

Counsel for appellant contended before the tribunals of the Patent Office and con-

tend here that appellant conceived the invention in the summer of 1923, and successfully reduced it to practice during the month of November of that year.

The evidence introduced by appellant has been fully and accurately detailed in the decision of the Examiner of Interferences from which we quote in extenso:

"The testimony submitted on behalf of the party Jacke indicates that in August, 1922, he built the so-called mechanical tuning device and demonstrated it to various persons. This mechanical form does not correspond to the counts in issue so that it is of no great weight herein except as it indicates the historical development of the various Jacke devices.

"In the summer of 1923 Jacke conceived the idea of electrifying his mechanical unit so that the radio might be tuned by electric motive means. As part of this conception Jacke drew the sketch appearing on pages marked May 26 and May 27 of exhibit 2. *This sketch contains all of the limitations of the issue herein and its existence at least as early as August, 1923, is established by the testimony of Mrs. Jacke who avers that she saw this sketch prior to the trip to California in August, 1923* (1365, page 228). *This sketch coupled with the corroborative testimony as to date is sufficient to constitute a conception of the invention in issue at least as early as August, 1923.*

"Subsequently while in California Jacke proceeded to electrify his mechanical unit of 1922. This necessitated the lengthening of the push button rods, the addition of electric contacts, a switch and a motor. This device with several of its original parts missing is introduced as exhibit 1.

"This device was purportedly completed in November, 1923, and was shown and demonstrated to various of the witnesses at different times subsequent to November, 1923, and as late as May, 1926. However, with the exception of one instance hereinafter referred to the device was never used to tune a radio receiver or disconnect and connect a loud speaker. Instead in all these demonstrations a light was used to represent the loud speaker and a radio dial only was connected to the shaft of the unit. The device was not therefore demonstrated to have utility for the purpose for which it was intended. *Its use apart from a radio receiver with a lamp to simulate the connection and disconnection of a loud speaker might indicate the possibility of future success and is a step in the direction of the experimental development of the device but it does not demonstrate that the device has utility beyond possibility or probability of failure for the purpose for which it is intended nor is it a complete demonstration of the apparatus as specifically set forth in the counts since the radio receiving apparatus and the loud speaker were not included in these demonstrations.*

"The device was, however, in one instance connected with a radio receiver. *This demonstration took place in November, 1923 and was witnessed only by Jacke and Mrs. Jacke. It appears that after the construction of the device Jacke to get the 'thrill' of tuning a radio receiver by merely pushing a button arranged to connect the tuning device to a radio receiver which he was then using.* To this end the receiver was disconnected from its normal location in the bookcase of the living room and transferred to the basement. *The electric tuning device was connected to the shaft of one of the two tuning elements of the receiver and the push button pins adjusted for various radio signals. Then by hand tuning the other dial of the radio receiver to a known point for the station desired and pushing a selected button the station was received. This demonstration took about three hours. Later the same day the remote control feature was tried out by mounting a solenoid attached to one of the push button shafts and the station corresponding to the adjustment of this push button tuned from a remote point.*

"Jacke states that the results obtained from this test were perfect.

"Mrs. Jacke, the only corroborative witness to this test, corroborates Jacke as to the procedure and testifies as to the operation as follows in Q. 1343, page 222: 'He hand-tuned the dial to the left, and pushed button No. 1 and the motor started turning the shaft on which the station setting pins were and it hit the lever from the top. Before we heard music the horn (loud speaker) was connected with the radio set and it was connected with the switch.'

"Mrs. Jacke also states that the operation was 'very satisfactory'.

*"One of the essential features of the issue herein is the means to disconnect the loud-speaker during the movement of the tuning means from one selected position to another and the testimony in this respect leaves much to be desired.* Mrs. Jacke says only that 'Before we heard music the horn was connected with the radio set and it was

connected with the switch'. Whether this means that the loud speaker was disconnected while the set was being tuned is not clearly apparent from the face of this testimony since many other interpretations could be placed on the words of Mrs. Jacke. Further Mrs. Jacke is not by any means an expert in the art and though she is remarkably conversant with the features of the device developed by her husband her opinion as to the success of the device is entitled to little weight.

"Particularly is this true in relation to her somewhat vague testimony relative to the disconnection of the loud speaker since Jacke testifies that the tuning device operated so fast that the motion was such he could not see it operate (Q. 561, page 128).

"It is extremely doubtful if any inexpert witness such as Mrs. Jacke could have determined whether the loud speaker was disconnected during the tuning operation when the time of tuning was as short as Jacke states. *No intermediate signals could have been received no matter how intense since in the manner of operation by Jacke it was first necessary to tune the left hand tuning element to the desired station by hand before the automatic means was put in operation hence only the receiver would only be tuned to, and could only receive the desired station when, as and if, the automatic tuning device operated. The receiver would be out of tune for all intermediate stations and the loud speaker would be silent between stations whether disconnected or not.*

  \*    \*    \*    \*    \*    \*

"*All that Mrs. Jacke states is that before music was heard the horn or loud speaker was connected and no basis is set forth for this conclusion.*

"It is true that it was Jacke's intention that the device should operate in this manner and a theoretical consideration of his sketches indicates that it might, but this is the essential distinction between a conception and a reduction to practice. Many devices appear to be perfect when in the form of drawings but prove to be entirely inadequate for the purposes intended when constructed and subjected to their normal use.

"Balanced against this single test of the device Jacke's subsequent actions must be considered.

"*Jacke never again connected the tuning element of exhibit 1 to a radio receiver instead he demonstrated its operation to his friends by merely letting them watch a dial revolve and a light turn on and off. Likewise Jacke made no attempt to adapt this device to a radio receiver or as an alternative construct a receiver for use with the device, instead Jacke spent the next five years in constructing a dozen different devices some of which are obviously outside of the counts in issue and none of which appear to have been operated with a radio receiver and used to interrupt the circuit of the loud speaker during tuning operations.*" (Italics ours.)

It appears from the record that in July, 1928, appellant completed a single-dial radio set, together with means for automatically tuning the radio receiver and automatically operated means for rendering the loud speaker ineffective during the tuning operation (appellant's exhibit 13), and that he also completed a device at that time for automatically tuning the radio receiver from a point remote therefrom, which was introduced in evidence as appellant's exhibit 13a. The evidence of record establishes that shortly thereafter those exhibits were successfully operated.

The tribunals of the Patent Office concurred in holding that, although appellant had established conception of the involved invention as early as August, 1923, by a sketch ("Diagram K") appearing on pages "marked May 26 and May 27" of appellant's exhibit 2 (a notebook containing data, certain observations, and drawings), he had failed to establish a successful reduction of it to practice prior to July, 1928, long subsequent to the filing of appellee's involved application (October 1, 1926), and that, as he had failed to establish diligence during the critical period, appellee was entitled to an award of priority of invention.

Although appellant was actively engaged in attempting to improve his 1923 device from time to time during the period from the summer of 1923 to the time he constructed his July, 1928, device, it clearly appears from the record that he was not actively engaged in reducing the involved invention to practice at and immediately prior to the time appellee filed his involved application—October 1, 1926—nor for a considerable period thereafter. Accordingly, as held by each of the tribunals of the Patent Office, appellant was not diligent in reducing the invention to practice during the critical period.

The sole issue in the case, therefore, is whether the evidence relative to the con-

necting of appellant's 1923 device (exhibit 1) to a two-dial radio receiver in November of that year, and the operation of that combination (as fully set forth in the quoted excerpt from the decision of the Examiner of Interferences) is sufficient to warrant a holding that that device was successfully operated at that time.

It is not argued here by counsel for appellant that the tribunals of the Patent Office erred in holding (relative to the test of appellant's exhibit 1 in November, 1923) that when the left-hand tuning element of the two-dial radio set was manually tuned to the desired station before the automatic tuning means of exhibit 1 was put into operation, the radio receiver would of necessity, as stated by the Examiner of Interferences, "be out of tune for all intermediate stations and the loud speaker would be silent between stations whether disconnected or not," and that, therefore, it was impossible to determine by a mere "listening test" whether the loud speaker was disconnected, as required by the involved counts, during the tuning operation.

It is argued by counsel for appellant, however, that as appellant's 1923 device (exhibit 1) was made strictly in accordance with the sketch ("Diagram K") appearing in appellant's exhibit 2 (which sketch the tribunals of the Patent Office concurred in holding disclosed the involved invention), and as the switch disclosed in "Diagram K" is "of the type adapted to control two circuits in such manner that one is opened before the other is closed; that is to say, in this instance, the circuit to the motor could not be closed to permit tuning until the horn [loud speaker] circuit was opened [the loud speaker made ineffective] by the switch and the horn circuit could not be closed until the motor circuit was opened," the structure of exhibit 1 was such that the loud speaker must have been disconnected during the operation of the automatic tuning means in the test of appellant's exhibit 1 in November, 1923, and that as exhibit 1 automatically tuned one tuning element of the two-dial radio during that test, such successful operation brings the instant case within the rule that "the successful operation of a combination establishes the successful operation of subsidiary parts thereof," which rule was announced and applied in United Shoe Machinery Co. v. Greenman, 1 Cir., 153 F. 283, 286, and Walsh v. Schultz et al., 103 F.2d 392, 26 C.C.P.A., Patents, 1184.

The fallacy of that argument, as we see it, is that the automatically operated means adapted to make the loud speaker ineffective during the tuning operation is not a mere subsidiary part of the combination defined in the involved counts, but, on the contrary, is one of the principal parts of that combination. We are of opinion, therefore, that the principle applied in the cases relied upon by counsel for appellant, hereinbefore cited, is not applicable here.

It is further argued by counsel for appellant that the loud speaker must have been disconnected and rendered ineffective during the tuning operation in the November, 1923, test, because when the tuning device was unattached to the radio receiving apparatus and a light was used to represent a radio loud speaker the light went out during the tuning operation and came on when that operation was completed, and that such demonstrations, which were observed by several of appellant's witnesses, clearly establish that the device used in that test was so constructed that the loud speaker was actually disconnected during the tuning operation and was again connected when the tuning operation was completed.

It is evident from that argument of counsel for appellant that, instead of relying upon the November, 1923, test of exhibit 1 as proof of a successful reduction of the involved invention to practice, they rather rely upon the sketch ("Diagram K," which disclosed the involved invention), a device (appellant's exhibit 1) built in conformity with the sketch, and the experimental tests of that device in which a light was used in place of a radio loud speaker.

From a theoretical standpoint the views advanced here by counsel for appellant are plausible. However, the law pertaining to a successful reduction to practice in cases such as this is not satisfied by demonstrations which indicate that if subjected to a practical test a device might work, but rather requires the submission of evidence establishing that the device was subjected to a practical test and that it did, in fact, work.

We are of opinion, for the reasons stated in the hereinbefore quoted excerpt from the decision of the Examiner of Interferences, that the evidence submitted by appellant is insufficient to establish that in the November, 1923, tests when appellant's exhibit 1 was attached to a two-dial radio

receiving apparatus the loud speaker was made ineffective during the tuning operation by the automatically operated means designed for that purpose; that it does not establish a successful reduction of the involved invention to practice; and that it is insufficient to establish that appellant at any time prior to the completion of exhibits 13 and 13a, in July, 1928, had successfully reduced the involved invention to practice. Accordingly, we concur in the views expressed by each of the tribunals of the Patent Office that, although appellant was the first to conceive the involved invention, he was the last to reduce it to practice, and that, as he has failed to establish diligence during the critical period, appellee is entitled to an award of priority of invention.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.

## Appeal No. 4257.

The interference is between appellant's application, serial No. 320,667, filed November 20, 1928 (involved in appeal No. 4256), and appellee Goldsborough's application, serial No. 197,778, filed June 10, 1927.

The invention relates to radio receiving apparatus comprising, in combination, an electron discharge device (vacuum tube) having a filamentary circuit, a progressively adjustable tunable circuit, means for progressively adjusting the tunable circuit, a loud speaker, a switch associated with the loud speaker independently of the filamentary circuit, and an automatic switching means associated with the switch in the loud speaker operable to disconnect the loud speaker during the tuning operation and to reconnect it when the tuning operation is completed.

The single count in issue reads: "1. In a radio receiving system, an electron discharge device having a filamentary circuit, a progressively adjustable tunable circuit associated therewith, a sound reproducing device for reproducing received energy into an intelligible form, means whereby to progressively adjust said tunable circuit, a switch associated with said sound reproducing device independently of said filamentary circuit, switch operating means associated with said switch and normally controlling said switch to maintain said sound reproducing device ineffective during periods of progressive tuning between stations, and means associating said switch operating means with said progressively operated tunable circuit adjusting means for rendering said sound reproducing device effective upon the tuning in of a station with said circuit adjusting means."

It will be observed that the involved count differs from counts 2 and 3 involved in the companion interference (appeal No. 4256) in that, as stated in the brief of counsel for appellant, it "is specific to 'progressive' or continuous tuning and to switching 'independently of said filamentary circuit.' "

Appellant is the junior party, and the burden was upon him to establish priority of invention by a preponderance of the evidence.

■ Having submitted no evidence, appellee is restricted to his filing date—June 10, 1927—for conception and reduction to practice.

Counsel for appellant rely upon the evidence stated and considered in appeal No. 4256 to establish conception and reduction to practice, it being claimed in this appeal, as it was in appeal No. 4256, that appellant conceived the invention in the summer of 1923 and successfully reduced it to practice during the month of November of that year.

■ The evidence of record does not establish that appellant was active either in perfecting his 1923 device (exhibit 1), or in constructing the device completed by him in July, 1928 (appellant's exhibits 13 and 13a), at or immediately prior to the time appellee filed his involved application—June 10, 1927—and thereafter until he completed the July, 1928, device.

It appears from the testimony of appellant's wife, Elsa M. Jacke, that it was some time in the spring or summer of 1927, she did not state the exact time, when appellant started the construction of exhibit 13. Furthermore, the witness testified that appellant did no work on that or any other device from the fall of 1927 until the middle of March or the first of April, 1928. Accordingly, appellant having failed to establish diligence in reducing the involved invention to practice, the sole issue in the case, as in appeal No. 4256, is whether appellant established an actual reduction to practice of the involved invention in November, 1923, when he connected exhibit 1 to a two-dial radio receiver and tested it in

the manner and to the extent set forth in our decision in appeal No. 4256.

Inasmuch as counsel for appellant rely in this appeal upon the same evidence and the same arguments stated and discussed in the companion interference—appeal No. 4256—it is unnecessary to reiterate here what we there said.

We are of opinion, for the reasons stated in the companion interference, that appellant failed to establish a successful reduction to practice of the involved invention prior to July, 1928, when he constructed and successfully operated his exhibit 13. Accordingly, although appellant was the first to conceive the involved invention, he was the last to reduce it to practice, and, as he failed to establish diligence during the critical period, appellee is entitled to an award of priority of invention.

The decision of the Board of Appeals is affirmed.

Affirmed.