**MATHIESON ALKALI WORKS, Inc., v. CROWLEY, Alien Property Custodian.**

**No. 8220.**

United States Court of Appeals for the District of Columbia.

Decided Oct. 11, 1943.

Mr. Louis D. Forward, of New York City, pro hac vice, by special leave of Court, with whom Messrs. Clarence M. Fisher, of Washington, D. C., and Raymond F. Adams and George E. Faithfull, both of New York City, were on the brief for appellant.

Mr. William W. Fleming, Attorney, Department of Justice, with whom Messrs. Edward M. Curran, United States Attorney, A. Matt. Werner, General Counsel to Alien Property Custodian, and George A. McNulty, Chief, Alien Property Unit, and George F. Foulkes, Attorney, both of the Department of Justice, all of Washington, D. C., were on the brief for appellee.

Before SOPER, Circuit Judge, sitting by designation, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

This is a patent interference case, involving a method of producing an alkali metal sulphide by reacting an alkali metal amalgam with an aqueous solution of the corresponding alkali metal polysulphide. Invention is conceded. Appellant is the assignee of George L. Cunningham, who filed his application on February 4, 1936. Appellee is the Alien Property Custodian, who claims through Luigi Achille, the assignee of Enzo Lanzetti, whose United States application was filed on April 15, 1936, and whose Italian application was filed on June 15, 1935. It is conceded that Cunningham discovered the method involved in the interference prior to June 15, 1935. The primary question of the case is whether Lanzetti or Cunningham is entitled to priority as of that date. The answer to this question turns on the further question whether Cunningham's contention that he had reduced his discovery to practice prior to June 15, 1935, was sufficiently corroborated.

The Patent Office held that the corroborating testimony was merely hearsay; that, as there was no other witness than Cunningham himself who actually saw the carrying out of his process at the time claimed for it, the corroboration was insufficient. The District Court expressly avoided reaching this conclusion as a matter of law, but held, nevertheless, that the evidence was insufficient to sustain appellant's contention. We have warned against the arbitrary or extreme use of a rule making visual observation the test of cor-

roboration.[1] Even in criminal cases, where life and liberty are at stake, corroboration may be established by circumstantial evidence.[2] While such a rule would be convenient of application in the Patent Office, it cannot be permitted to excuse the exercise of discretion or absorb the administrative function.[3] The District Court properly challenged its application as a matter of law.

But we agree, also, with the conclusion of the District Court that the evidence offered by appellant was insufficient to provide the corroboration which is required. Corroboration is not a fixed quantity.[4] It varies with respect both to the evidence which constitutes it and the evidence which it is designed to corroborate.[5] When a case is tried to a judge the requirement is that he shall, in the proper exercise of his judicial function, weigh carefully both the evidence to be corroborated and that which is offered in its support.[6] If the first is conclusive in character, he may be satisfied with supporting evidence of less force; and vice versa.[7]

In the present case the trial judge stated in his memorandum opinion: "I do not decide whether or not the Court might not be so impressed by the manner of testifying before it of an inventor as to require some lesser degree of corroboration, but in the instant case the inventor's testimony was by deposition and without cross examination, * * *." Under such circumstances the burden upon one who attempts corroboration is obviously much greater. It is beside the point that the procedure of the Patent Office, and of the District Court in Section 4915[8] proceedings, permits, or even encourages, the use of such depositions. A procedural practice, designed for convenience, must be applied with due regard for its own limitations.

The corroboration offered by appellant consisted of the testimony of Maurice Craig Taylor, Cunningham's superior officer and an employee of appellant, based upon conversations with Cunningham and upon notebook entries and reports prepared by Cunningham. It is not contended that Taylor saw Cunningham carry out his process. He expressly disavowed such a contention. Both the Patent Office and the District Court accepted Cunningham's notebooks and reports as evidence of conception, but denied that they proved reduction to practice. Under these circumstances, and upon a careful examination of the record, we see no reason to question the trial court's conclusion that the evidence of reduction to practice was inconclusive and the attempted corroboration was insufficient. In Cunningham's testimony concerning his notebooks and reports, and in the notebooks and reports themselves, he referred to his experiments as revealing a possibility which justified further study, rather than a reduction to practice. Testifying by deposition, on November 4, 1937, he used the significant language: "* * * the method *now used* to produce sodium sulfide," to describe the preexisting method which his discovery was supposed to have superseded by reduction to practice before June, 1935. [Italics supplied] Taylor's attempted corroboration was equally inconclusive. In fact, he indicated some doubt as to his understanding of the process which Cunningham claimed to have discovered. In a report, which he submitted under date of August 17, 1935, Taylor confessed that he was "a little vague" on just what Cunningham had done and went on to say: "* * * I *believe* that there is

---

[1] Miessner v. Hoschke, 76 U.S.App.D.C. 343, 345, 131 F.2d 865, 867.

[2] Ercoli v. United States, 76 U.S.App. D.C. 360, 364, 131 F.2d 354, 358.

[3] 7 Wigmore, Evidence (3d Ed. 1940) § 2065a.

[4] See Note, 34 Harv.L.Rev. 667; 7 Wigmore, Evidence (3d Ed. 1940) §§ 2030, 2033; Gildersleeve v. Atkinson, 6 N.M. 250, 27 P. 477.

[5] Scheftel v. Hatch, 70 Hun 597, 25 N.Y.S. 240, 241; Alexander v. Blackman, 26 App.D.C. 541; People v. Galbraith, 66 Cal.App. 761, 764, 226 P. 983, 984; Yoder v. United States, 10 Cir., 71 F.2d 85, 89.

[6] See The Barbed Wire Patent (Washburn & Moen Mfg. Co. v. Beat 'Em All Barb-Wire Co.), 143 U.S. 275, 284, 12 S. Ct. 443, 36 L.Ed. 154; Commonwealth v. Bishop, 165 Mass. 148, 150, 42 N.E. 560, 561; Harvey v. United States, 2 Cir., 23 F.2d 561, 564, 566.

[7] Orens v. Orens, 88 N.J.Eq. 29, 33, 102 A. 436, 438; Orcutt v. Orcutt, 94 N.J.Eq. 303, 119 A. 377. Cf. McCurdy v. State, 39 Okl.Cr. 310, 264 P. 925, 928 (sufficiency of corroboration of testimony of accomplices is question for jury).

[8] 35 U.S.C.A. § 63.

only a very limited number of experiments *which* however *prove* definitely and conclusively that polysulfides *can be reduced* with sodium amalgam." [Italics supplied] In an earlier report of June 11, 1935, he had spoken in terms of possibilities which justified increased research expenditures "to thoroughly investigate and evaluate such ideas as are indicated in the above list [including the claimed invention] *as long as they give promise.* * * * It is emphasized that if we are to get anything of value from these *proposals,* we must actually work on them and *attempt to develop them.*" [Italics supplied] While it is possible, by piecing together some of Cunningham's statements and some of Taylor's comments thereon—and by disregarding others—to make a reasonably persuasive case for reduction to practice, that is far from sufficient to justify setting aside the findings of the trial court and its conclusions based thereon.

We have examined appellant's other contentions and find them to be without merit.

Affirmed.