# GARRELS *v.* FREEMAN.

---

PATENTS; INTERFERENCE; BURDEN OF PROOF; UNCORROBORATED TESTIMONY OF JOINT INVENTORS.

1. Evidence in an interference case will satisfy the burden of proof imposed upon the junior applicant, when it shows with certainty that he conceived the invention of the issues before the filing of his opponent's application.
2. Whether the conception of one of the parties to an interference case was nothing more than an appropriation by him of the invention and disclosure of an associate, who testified as a witness for his opponent, is not a pertinent inquiry in such proceeding; *following* Foster v. Antisdel, 14 App. D. C. 552.
3. Testimony of an associate of the junior party to an interference, who testifies as a witness for the senior party, tending to establish

the relation of employer and employee between the witness and the junior party, tends rather to strengthen than to weaken the claim of the latter to the act and date of conception; *following* Milton v. Kingsley, 7 App. D. C. 531; Gedge v. Cromwell, 19 App. D. C. 192; and Gallagher v. Hastings, *ante,* p. 88.

4. A delay on the part of one of the parties to an interference in filing his application, caused by the loss of his drawings, was *held,* under the circumstances, not to show a want of reasonable diligence in reducing to practice.

5. Where joint inventors in interference with another inventor, testify in their own behalf to a joint conception and no witness is called to prove a disclosure of the invention by them, and there are no independent circumstances tending to corroborate their statements, such unsupported statements are insufficient to overcome a priority established on the part of the opposing party; and the enforcement of this rule is not a denial of the competency of an interested party to testify in his own behalf.

No. 212.  Patent Appeals.  Submitted January 14, 1903.  Decided February 3, 1903.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.     *Affirmed.*

The facts are sufficiently stated in the opinion.

Mr. *James A. Carr* for the appellants.

Mr. *Hervey S. Knight* and Mr. *George H. Knight* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the court:

This is an interference proceeding to determine priority of invention of an improvement in mounting and protecting the engines and running-gear of automobiles.

The issue as declared embraces the following ten counts:

" 1. A motor-vehicle comprising an axle operatively connected to a motor to be driven thereby, a casing for said axle arranged to act as a beam and constituting part of the frame of the running-gear, said vehicle comprising a member ex-

tending from the axle-casing to the motor shaft or frame for positioning said shaft, and said member being arranged to incase the mechanism for transmitting power from said motor to said axle.

" 2. In a motor-vehicle having a chain-driven axle, a side-bar running-gear, a casing for said claim and said axle consisting of a central portion for incasing the gearing and tubular extensions for incasing the axle and a portion extending from said axle to said motor for incasing said chain, said tubular extensions being rigidly fixed to the central portion and connected to the side bars of the running-gear, whereby said casing constitutes part of the running-gear frame.

" 3. A gear-case for the actuating mechanism of motor-vehicles, comprising two members and an intervening universal joint.

" 4. A gear-case for the actuating mechanism of motor-vehicles comprising a member mounted on the vehicle-body and adapted to incase the motor, and a member mounted on the running-gear and forming part thereof, and a universal joint between said members.

" 5. A gear-case for the actuating mechanism of motor-vehicles comprising a member mounted on the vehicle-body and adapted to incase the motor, and a member swiveled to the running-gear and forming part thereof, and a universal joint between said members.

" 6. In a motor-vehicle, a driving-motor pivotally mounted on the vehicle-body and operatively connected to an axle of said vehicle, a casing for said axle journaled concentric therewith, said casing having a laterally-projecting portion arranged to incase the connecting mechanism, and said projecting portion being pivotally connected to the motor frame or casing and constituting a strut between it and said axle-casing.

" 7. In a motor-vehicle, a driving-motor pivotally mounted on the vehicle-body and operatively connected to an axle of said vehicle, a rigid casing for said axle extending from side bar to side bar and constituting part of the running-gear, and a strut extending from the motor frame or casing to

said axle-case and having a pivotal or universal connection therewith.

" 8. In a motor-vehicle, a driving-motor pivotally mounted on the vehicle-body and operatively connected to an axle of said vehicle, a rigid casing for said axle constituting part of the running-gear, and a casing for the mechanism connecting said motor to said axle, said last-mentioned casing constituting a strut and being pivotally or universally connected to the motor frame or casing and to the axle-casing respectively.

" 9. In a motor-vehicle, a driving-motor pivotally mounted on the vehicle-body, a chain for transmitting power from said motor to the driving-axle of said vehicle, a casing for said chain extending from the frame or casing of said motor to the running-gear, and pivotally connected to one and universally connected to the other, said chain-case constituting a strut for maintaining the distance between the driving-shaft and the axle constant.

" 10. In a motor-vehicle, a driving-motor pivotally mounted on the vehicle-body, and a driving-chain for transmitting motion from said motor to an axle of said vehicle, a casing journaled concentric with said axle and having tubular portions projecting laterally therefrom. Said tubular projections being pivotally connected to the motor frame or casing and constituting a case for said chain and a strut between the motor and the axle-casing."

Garrels and Clinton Kimball claim as joint inventors under an application filed January 17, 1900. Stewart E. Freeman's application bears date June 8, 1900.

The examiner of interferences awarded priority to Freeman on all the counts of the issue. On appeal to the examiners-in-chief his decision was reversed as to counts 3, 4 and 5, and affirmed as to the remaining seven. On appeal from them, in turn, the Commissioner of Patents sustained the claim of Freeman under counts 1, 2, 6 and 10, and decided in favor of Garrels and Kimball under counts 3, 4, 5, 7, 8 and 9. They alone have appealed and our

consideration is, therefore, confined to the four counts of the issue, (1, 2, 6 and 10,) the invention of which, notwithstanding differences of opinion in respect of the other counts, all the tribunals of the Patent Office have concurred in awarding to Freeman.

Perceiving no error in the Commissioner's decision, we think it unimportant as well as unnecessary to review the evidence upon which that decision is based, and shall merely state our conclusions thereon in disposing of the questions of law that have been raised by the assignment of errors.

1. The evidence on behalf of Freeman answers the requirement of the burden of proof imposed upon him by the earlier application of his opponents, for it shows with sufficient certainty that he had conceived the invention of the pending issues some time before the filing of that application.

2. Whether Freeman's conception was nothing more than an appropriation by him of the invention and disclosure of his associate, Ugland, is not a pertinent inquiry in this proceeding to which Ugland is not a party. *Foster* v. *Antisdel,* 14 App. D. C. 552, 554.

Moreover, we agree with the Commissioner that Ugland's testimony, offered on behalf of the appellants, has the effect to strengthen, rather than weaken Freeman's claim of the act and date of conception. It does no more than establish between them a relation whereby the assistance of Ugland inures to the benefit of Freeman under the well-established rule governing that and similar relations. *Agawam Co.* v. *Jordan,* 7 Wall. 583, 602; *Milton* v. *Kingsley,* 7 App. D. C. 531, 537; *Gedge* v. *Cromwell,* 19 App. D. C. 192, 197; *Gallagher* v. *Hastings, ante,* p. 88.

3. There was no lack of reasonable diligence on the part of Freeman in reducing his conception to practice. His delay in filing his application is well accounted for by the loss of his drawings.

4. Freeman's evidence, having established his conception of the invention at a date prior to the filing of the appellant's application, entitled him to the award of priority over them unless overcome by evidence of sufficient weight

to carry their conception back of his established date. This they undertook to do by testifying on their own behalf to a joint conception at an earlier date. No witness was called to prove a disclosure of the invention by them, and there are no independent circumstances established by the evidence tending to corroborate their statements.

These unsupported statements of the two rival claimants were held insufficient to overcome the priority that had been established by satisfactory proof on the part of Freeman, in accordance with a long-established rule in such cases. *Berring* v. *Hayword,* 14 O. G. 117; *Dickson* v. *Kinsman,* 18 O. G. 1224; S. C. C. D. 1880, 208; *Mergenthaler* v. *Scudder,* 11 App. D. C. 264, 278; *Hisey* v. *Peters,* 6 Idem, 68, 73; *Winslow* v. *Austin,* 14 Idem, 137, 141; *De Wallace* v. *Scott,* 15 Idem, 157, 162; *Young* v. *Donnolly,* C. D. 1898, 20; *Sharer* v. *McHenry,* 19 App. D. C. 158, 162; *Petrie* v. *De Schweinitz,* Idem, 386, 389.

The contention on behalf of the appellants is that the enforcement of this rule is a denial of the competency of an interested party to testify on his own behalf; and they insist that the evidence of such a party, being admissible, must be accepted, when unimpeached and uncontradicted, as sufficient proof of his claimed date of conception.

This contention, we think, is answered in the following extract from the opinion of the Chief Justice in *Winslow* v. *Austin,* 14 App. D. C. 141.

"It is very true as declared by this court in *Mergenthaler* v. *Scudder,* 11 App. D. C. 264, ·the fact of conception by an inventor, for the purpose of establishing priority, cannot be proved by his mere allegation, nor by his unsupported testimony, where there has been no disclosure to others or embodiment of the invention in some clearly perceptible form, such as drawings or models, with sufficient proof of identity in point of time. For if such unsupported proof of the inventor himself could be received *as sufficient evidence* of conception, in many cases there would be no way of effectually rebutting or disproving such evidence. But it does not follow from this principle that the party upon whom is cast

the *onus* of proving the fact of priority of invention is an incompetent witness to testify as to the fact of priority. The competency or admissibility of the evidence is one thing, but the sufficiency of it to establish a fact is quite a different thing. A party may testify, but his testimony may not be taken without corroboration as sufficient to establish a particular fact."

Nor do we see sufficient ground for making an exception in this case to the settled rule respecting the weight of evidence of the complete conception of an invention that is required to antedate another whose conception has been established under the same rule, because there have been two witnesses to the fact instead of one. These witnesses are the two opposing applicants who jointly lay claim to the one invention, the one conception. The conception of one is incomplete without conjunction with the other. All the reasons, consequently, which underlie the rule apply with the same force where there are joint inventors, instead of a single one.

We have found no error in the decision appealed from and it will be affirmed. It is so ordered, and further that this decision be certified to the Commissioner of Patents as the law provides.                                        *Affirmed.*

A motion by the appellants for a rehearing filed February 17, 1903, was denied March 4, 1903.

Mr. Justice Gould of the Supreme Court of the District of Columbia sat with the Court in the hearing and determination of this case, in the place of Chief Justice Alvey.