# KITCHEN v. SMITH.

PATENTS; INTERFERENCE; DILIGENCE; BURDEN OF PROOF; WITNESSES.

1. While an inventor is rather to be commended than blamed for attempting to make his invention as complete and practicable as possible before applying for a patent, instead of entering the Patent Office with it in a crude and incomplete state (citing *Griffin* v. *Swenson,* 15 App. D. C. 135, and cases there cited), it is incumbent upon him to show that he was so engaged during the period between his conception and disclosure of the invention and his entry into the office.

2. Although a party to an interference is a competent witness on his own behalf, his uncorroborated testimony is not sufficient to establish conception of the invention or its reduction to practice, for the reason that if held sufficient there would be few cases in which such evidence could be rebutted or disproved.   (Citing *Mergenthaler* v. *Scudder,* 11 App. D. C. 141; *Winslow* v. *Austin,* 14 App. D. C. 141; *Garrels* v. *Freeman,* 21 App. D. C. 207.)   But it has never been adjudged that this rule extends to facts and circumstances having no necessary connection with the facts of conception and reduction to practice, and which are of a character readily susceptible of rebuttal or contradiction, and in such cases it would seem that the testimony might be considered and weighed like that of any other interested witness.

3. Corroboration of the testimony of a party to an interference may exist in established circumstances admitting of satisfactory inferences.

4. From the very nature of the subject, diligence cannot be measured by an arbitrary standard, but is to be determined in each case by its particular circumstances.

5. Failure by one of the parties to an interference, who could devote only his leisure time to his invention, to file an application for more than six months after the other party entered the field and for more than

four months after the other party filed his application, during which
time he made a very important improvement in his invention, which
was the subject of several allowed claims not embraced in the inter-
ference, and also prepared his application, does not constitute such
a lack of diligence as will lose to him the benefit of his earlier date
of conception, even though the other party was diligent both in re-
spect to reduction to practice and in applying for a patent. (Citing
*O'Connell* v. *Schmidt*, 27 App. D. C. 77.)

No. 808.   Patent Appeals.   Submitted November 19, 1912.   Decided Janu-
ary 6, 1913.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference case.

*Affirmed.*

The facts are stated in the opinion.

*Messrs. Emery, Booth, Janney, & Verney* for the appellant.

*Mr. Frank S. Busser* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the
Court:

Appeal from the decision of the Commissioner of Patents
awarding priority of invention of an internal combustion en-
gine, in an interference proceeding.

The issue of the interference is embraced in the following
count:

"In an internal combustion engine the combination of a
cylindrical casing, having lateral and exhaust ports, a cylin-
drical revoluble valve fitting into said casing and adapted to
open and close said ports, a piston inside said valve, a crank
shaft and a pitman connecting said piston and crank shaft, and
gearing adapted to drive said valve from the crank shaft at a
positive ratio."

It is conceded that John G. A. Kitchen, whose application
was filed December 28, 1908, is entitled to October 1, 1908, as

the date of his conception. All of the tribunals of the Patent Office concurred in finding that Paul S. Smith, whose application was filed April 22, 1909, conceived and disclosed the invention on or before September 15, 1908; and this has not been controverted. Priority was made to turn upon the question of Smith's diligence. The Examiner of Interferences, holding that Smith was not lacking in diligence awarded him priority. This decision was reversed by the Examiners in Chief, who found diligence wanting. They were, in turn, reversed by the Commissioner, who agreed with the Examiner of Interferences. Bearing in mind the doctrine that an inventor is rather to be commended than blamed for attempting to make his invention as complete and practical as possible before applying for a patent, instead of entering the office with it in a crude and incomplete state— see *Griffin* v. *Swenson,* 15 App. D. C. 135–142; and cases there cited—it is incumbent upon Smith to show that he was so engaged during the period between his conception and disclosure of the invention and his entry into the office. That he was engaged in attempting to improve upon his engine and make it more practical is fairly well established by evidence other than his own up to about December 25, 1908. The time to be accounted for, as his opponent had first entered the office, lies between December 25, 1908, and April 10, 1909; when his application was finally prepared and executed. Allowing a month, which the experience of the Commissioner deems reasonable, for the work of preparing the application and accompanying drawings, the time to be accounted for is diminished to about three months and a half. Smith himself testified that during this time he was closely occupied in the service of his employer,—his employment being that of a chemist for the Fabrikoid Company, which had no interest in his invention,— and gave his leisure time to the problem of so constructing his engine as to avoid leakage around the walls of the cylinder from the valve port to the cylinder ports, and the undue friction due to unbalanced pressure tending to force the valve

sleeve against one side of the cylinder during a part of the cycle of operation. As said by the Commissioner:

"That these defects existed in the design as shown in his October drawings seems obvious when once pointed out. During the period in question he conceived and developed the idea of constructing the cylinder with an inner sleeve, as shown in his application drawings, which, with the accompanying modifications in construction, would seem to overcome, largely at least, the objections named. This improvement is unquestionably an important feature of the design as shown in the application filed, and, as pointed out on behalf of Smith, it constituted the subject-matter of certain allowed claims of the application involved herein."

It is well settled that while the inventor is a competent witness on his own behalf, his uncorroborated testimony is not sufficient to establish conception of the invention or its reduction to practice. The foundation of the rule is that if held sufficient there would be few cases in which such evidence could be rebutted or disproved. *Mergenthaler* v. *Scudder,* 11 App. D. C. 264; *Winslow* v. *Austin,* 14 App. D. C. 141; *Garrels* v. *Freeman,* 21 App. D. C. 207–212. It is unnecessary to cite the many cases in which the rule has been upheld and applied. It was dictated by sound public policy, and experience has tested its justice and expediency. However, it has never been decided that the rule requiring corroboration extends to facts and circumstances having no necessary connection with the facts of conception and reduction to practice, and which are of a character readily susceptible of rebuttal or contradiction. In such cases it would seem that the testimony might be considered and weighed like that of any other interested witness. It is unnecessary to pursue the subject, because the evidence regarding Smith's constant occupation in other works during the period is of little importance, and was evidently so regarded by both parties, because no question was asked by either respecting it, of the president of Smith's Company, who must have known all the facts.

The substantial question is, Was Smith corroborated in

respect of holding back his invention while working out the problem above mentioned? As held by the Commissioner, corroboration may exist in established circumstances admitting of satisfactory inferences. The improvement worked out in the mind of Smith. found expression in his later drawing, which became a part of his application. The Patent Commissioner considered this an important feature of the invention described; and that it is so is attested by the fact that it was the subject of several claims that were allowed, but which are not embraced in the interference. From the very nature of the subject, diligence cannot be measured by an arbitrary standard, but is to be determined in each case by its particular circumstances. The case more clearly resembles *O'Connell* v. *Schmidt,* 27 App. D. C. 77, than others cited. We concur with the Commissioner in the view that, considering the progress of Smith during the period of delay, it was not so unreasonable as to cause him to lose the benefit of his earlier conception of the invention. As the decision of the Commissioner fully discusses the question at issue, we deem it unnecessary to add to the discussion. The decision is affirmed; and this decision will be certified to the Commissioner of Patents. *Affirmed.*