**LARSEN v. MARZALL, Commissioner of Patents.**

No. 11008.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 17, 1952.

Decided March 6, 1952.

John H. Bruninga, St. Louis, Mo., with whom Richard G. Radue, Washington, D. C., was on the brief, for appellant.

H. S. Miller, United States Patent Office, Washington, D. C., with whom E. L. Reynolds, Solicitor, United States Patent Office, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, PRETTYMAN and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

Appellant Delmar Larsen seeks to obtain a patent, in a suit brought under R.S. § 4915, 35 U.S.C.A. § 63, covering a fluid composition to be used in the drilling of oil wells.[1] The Patent Office denied the application because it thought Larsen had not sufficiently shown that he had completed his invention prior to disclosure of the composition in the earlier application of a third party. This view was sustained by the District Court. It constitutes the sole defense relied on and the only one on which we pass. Montgomery v. Marzall, 88 U.S. App.D.C. 281, 285, 189 F.2d 640, 644; Hoover Co. v. Coe, 325 U.S. 79, 89, 65 S.Ct. 955, 89 L.Ed. 1488.

From the District Court's findings, it appears that at the time he conceived his invention Larsen was employed by the National Lead Company, Baroid Sales Division, as Manager of Research and Development. Under him worked one George S. Miller, a chemist in Baroid's laboratory. Both Miller and Larsen were subject to the supervision of Baroid's Manager, George L. Ratcliffe. During February and March of 1941, Larsen wrote out and disclosed to Miller and Ratcliffe a description of his idea. Under Larsen's direction, Miller then proceeded to conduct certain laboratory tests of the fluid, the tests being performed "in accordance with the Recommended Practice on Standard Field Procedure for Testing Drilling Fluids theretofore established by the American Petroleum Institute." Finding of Fact No. 8. On March 17, 1941, a written report of these tests was made by Miller to Larsen, indicating the superiority of Larsen's fluid over others then known in the art. This report was submitted to Ratcliffe, and no further tests were made at the time.

On April 17, 1944, more than three years later, Larsen filed the application in suit. Meanwhile, by June 16, 1942, Miller had filed three applications for patents on drilling fluids, which were subsequently

---

1. In drilling wells by the rotary drilling system, a fluid is pumped into the drill-pipe under pressure which forces it out through holes in the bit at the lower end. The bit being of larger diameter than the pipe, an annular space is formed between the wall of the bore and the pipe itself, and the fluid is forced up through this space and out at the top of the well. The fluid is intended to bring up with it the drill cuttings.

   For efficient performance of its function, it is desirable that the drilling fluid have a "sealing" quality which prevents loss of the fluid by filtration through the bore wall. This quality must be supplied, moreover, by a substance which will not impair other necessary characteristics of the fluid and which will be effective over a wide temperature range. Larsen uses a natural asphalt to impart this sealing quality to drilling fluids having an oil base. His claim 1, which is typical, reads as follows:

   "An oil-base well-drilling fluid containing a natural asphalt of a type and character dispersible in oil and chosen from the group consisting of gilsonite, manjak, glance pitch and grahamite, in an amount sufficient to substantially reduce the filtration loss."

granted. For the purposes of the present litigation, Larsen and the Patent Office are in substantial agreement that Miller's applications disclosed but did not claim Larsen's composition. Thus we have, not an interference, but the question whether Larsen can show that he had conceived his invention and reduced it to practice before Miller's application was filed. On this point, the Patent Office and the District Court ruled Larsen's proof insufficient.

■ Insofar as the District Court's findings are of fact, we agree with them and adopt them. Even if we disagreed, we would not overturn them lightly. Rule 52 (a), Fed.Rules Civ.Proc. 28 U.S.C.A.; Wynne v. Boone, 88 U.S.App.D.C. 363, 191 F.2d 220; Standard Oil Development Co. v. Marzall, 86 U.S.App.D.C. 210, 181 F.2d 280. But certain of the findings here are more in the nature of conclusions of law. These include the trial court's determination as to the sufficiency of the laboratory tests to constitute reduction to practice and its conclusion concerning the adequacy of corroboration. Findings of Fact Nos. 13, 14, and 17. On the legal aspects of these questions, we must form an independent judgment.

■ Both the Patent Office and the trial court deemed the 1941 tests insufficient to constitute a reduction to practice because "Larsen did not carry out any demonstration of the invention by actual use" of his fluid in an oil well. Finding of Fact No. 12. With some products, it is clear that actual use may be necessary to show reduction to practice. Fageol v. Lyon, 53 App.D.C. 361, 290 F. 336; Smith v. Bousquet, 111 F.2d 157, 27 C.C.P.A., Patents, 1136; Payne v. Hurley, 71 F.2d 208, 21 C.C.P.A., Patents, 1144; see Knutson v. Gallsworthy, 82 U.S. App.D.C. 304, 315, 164 F.2d 497, 508. With others, however, laboratory (or similar) tests may be sufficient. Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 373–374, 383–384, 48 S.Ct. 380, 72 L.Ed. 610; Rogers v. Willoughby, 55 App.D.C.

65, 71–72, 1 F.2d 824, 830–831; Sinko Tool & Mfg. Co. v. Automatic Devices Corp., 2 Cir., 157 F.2d 974, 977–978. The governing considerations are two: First, do the tests employed—in actual use or in the laboratory—show that the product will serve the purpose for which it is designed, and show this so conclusively that practical men will without more take the risk of putting it into immediate commercial production and use? Second, would the time, effort and expense of conducting actual field experiments be unjustified because of the small likelihood that they would yield substantially greater knowledge concerning the product's performance? Both criteria are satisfied in the present case. The tests which were made in March 1941 were at that time the standard ones employed by the industry, and "drillers relied upon such tests conducted by laboratory apparatus outside of the well in order to determine the utility and functioning of a drilling fluid." Finding of Fact No. 9. And since "it was impossible to conduct those tests at the bottom of the well or along the well bore," *ibid,* we conclude that what was done constituted a sufficient reduction to practice.

In reaching this conclusion, we have considered the significance to be accorded Larsen's delay of three years in filing his application. Lack of diligence can, of course, indicate lack of conviction that a product's utility has been proved. See Chittick v. Lyons, 104 F.2d 818, 822, 26 C.C.P.A., Patents, 1382. But suspension of research activities and reluctance to market a new product during the war, as well as the desirability of obtaining asphalt mines before going into production, appear to have been the major reasons for Baroid's temporary shelving of Larsen's invention. App. 52–54; Finding of Fact No. 15. In Seeberger v. Russel, 26 App.D.C. 344, where a delay of two and one-half years occurred, we said that this was "insufficient to destroy the weight of the proof of actual reduction to practice." We think the same is to be said of the instant case.[2] See also Sinko

2. We note that there was no concealment of the invention during this period such as would imply an attempt to keep the product from the public until its discovery by another. Compare Brown v. Campbell, 41 App.D.C. 499; Lederer v.

Tool & Mfg. Co. v. Automatic Devices Corp., 2 Cir., 157 F.2d 974, 976–977.[3]

█ Drawing for support on interference cases,[4] the Patent Office contends that an inventor's testimony as to conception and reduction to practice requires corroboration. Here, the Patent Office agrees with the District Court's finding that "Plaintiff Larsen's testimony as to conception of the invention prior to Miller's filing date was corroborated by Ratcliffe and by documents having dates prior to Miller's filing dates." Finding of Fact No. 11. We think that the corroboration with respect to reduction to practice, if necessary at all, was likewise sufficient. The Patent Office specifically concedes "that [the 1941 laboratory] tests by Miller, whatever such tests were worth, inured to the benefit of appellant." Br. p. 7. Miller's report of March 17, 1941, setting forth the successful completion of the laboratory tests, was put in evidence, without objection on the part of the Patent Office. It was a sworn statement, to which were attached detailed tables showing the results of the laboratory tests. Ratcliffe testified that he had contemporaneously received and considered it. Further corroboration could not reasonably be required.[5]

We think it was error to deny a patent to Larsen on the ground that the disclosures in Miller's applications stood as a bar. The judgment of the District Court must therefore be

Reversed, and the case remanded for further proceedings not inconsistent with this opinion.

Walker, 39 App.D.C. 122; Mason v. Hepburn, 13 App.D.C. 86. Larsen disclosed his conception to Ratcliffe, as well as to his competitor-associate, Miller, by whom the reduction to practice was actually carried out.

3. It is said that Larsen delayed till the last possible moment before filing his application: if he had waited another five days, more than a year would have elapsed since the issue date of the first Miller patent, and he would have been barred under R.S. § 4886, 35 U.S.C.A. § 31, and former Rule 75 of the Patent Office [Rule 1.131, 35 U.S.C.A.Appendix]. But he did not wait the five days, and if Congress has fixed a limitation of 365 days, it is not for us to fix one of 360.

4. Mergenthaler v. Scudder, 11 App.D.C. 264; Winslow v. Austin, 14 App.D.C. 137, 141; Garrels v. Freeman, 21 App. D.C. 207, 212; Kitchen v. Smith, 39 App.D.C. 500, 503; Mathieson Alkali Works, Inc., v. Crowley, 78 U.S.App. D.C. 163, 138 F.2d 281.

5. Compare Rosinski v. Whiteford, 87 U. S.App.D.C. 313, 184 F.2d 700.